**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RUVEL ALFRED SMITH, JR.,

        Petitioner,

vs.                              Case No.:    3:13-cv-924-J-34PDB
                                                        3:97-cr-120-J-34PDB

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

      This case is before the Court on Petitioner Ruvel Alfred Smith, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1, Motion to Vacate)[1], filed on July 23, 2013.  The United States filed a Motion to Dismiss on May 19, 2014.  (Doc. 9, Motion to Dismiss).  Smith filed a Response to the Government's Motion to Dismiss on June 3, 2014.  (Doc. 10, Reply).

      Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing

---

[1] Citations to Smith's criminal case file, United States of America v. Ruvel Alfred Smith, Jr., 3:97-cr-120-J-34PDB, are denoted as "Crim. Doc. ___."  Citations to Smith's civil § 2255 case file, 3:13-cv-924-J-34PDB, are denoted as "Doc. ___."

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim may be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

For the reasons set forth below, Smith's Motion to Vacate is due to be dismissed as untimely.

## I.    Background

On May 14, 1997, a grand jury sitting in the Middle District of Florida indicted Smith and a co-defendant on one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two). (Doc. 9-1, Indictment at 1-2). The Indictment did not allege a specific drug quantity, which was neither uncommon nor required before the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466 (2000) (any fact that would increase the maximum sentence, other

---

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

than the fact of a prior conviction, is an element of the offense which must be submitted to a jury and proven beyond a reasonable doubt).  Following discovery and suppression hearings, the United States filed an Information, pursuant to 21 U.S.C. § 851(a)(1), establishing that Smith had two prior felony drug convictions, thereby increasing the potential sentences on both counts to a mandatory term of life in prison.  (See Doc. 9-2, Section 851 Information).  In the Information, the United States alleged that in 1978, Smith was convicted in a Florida state court of possession of cocaine with intent to sell, and that in 1991, he was convicted in a Florida state court of possession of cocaine.  (Section 851 Information at 1, ¶¶ 1-2).

Smith proceeded to a jury trial.  The evidence showed that agents from the Drug Enforcement Administration (DEA) were conducting narcotics-interdiction surveillance at a bus station in Jacksonville, Florida when they observed Smith and the co-defendant behaving suspiciously.  See United States v. Smith, 201 F.3d 1317, 1319-20 (11th Cir. 2000).  Both men were scanning the bus terminal, constantly changing seats, walking about, and at one point engaged in a hurried, whispered conversation before walking away in different directions.  The agents were concerned about the contents of a pair of expensive-looking hard-sided suitcases, which Smith and the co-defendant left unattended until right before they boarded a bus bound for Charleston, South Carolina. As the boarding announcement was made, the co-defendant picked up both suitcases and passed one off to Smith.  Each man then proceeded through the boarding gate with one suitcase, before the suitcases were loaded onto the bus's undercarriage.  The agents boarded the bus to conduct a "routine public transportation safety check," during which the agents asked to inspect each passenger's ticket and photo identification, and asked

whether any passenger was carrying drugs, weapons, or large amounts of cash.  Smith produced identification and a one-way ticket from Miami, Florida to Charleston, South Carolina, and denied that he had any drugs or weapons.  Smith also denied that he was traveling with anyone else.

The officers retrieved the two suitcases from the undercarriage.  The luggage tags reflected that the suitcases originated in Miami, Florida and belonged to a "Mr. Pender." Because the agents' passenger check had not revealed a "Mr. Pender" aboard the bus, the agents asked the passengers whether anybody claimed ownership of the suitcases. No one did.  When the agents specifically asked Smith whether the suitcases belonged to him, Smith denied ownership.  The agents opened the suitcases and discovered 11 kilograms of cocaine.  Based on their previous observations, the agents arrested Smith and the co-defendant.  After arresting Smith, the agents found a bus ticket in the name of "Pender" concealed in a seat near where Smith and the co-defendant had been sitting.

The co-defendant later pled guilty and testified against Smith at trial.  Following three days of trial, the jury found Smith guilty as to both counts in the Indictment.  (See Crim. Doc. 73, Jury Verdict).

A few months later, the Court held an evidentiary sentencing hearing to determine whether Smith's 1978 felony drug conviction was counseled.  (See generally Doc. 9-4, Sentencing Transcript ["Sentencing Tr."]).  The Court found that the conviction was counseled, thereby permitting its use as a predicate conviction for enhancing Smith's sentence.  (See Motion to Dismiss at 3-5).  Smith raised no other objections to the prior convictions, however.  After finding that Smith's offense involved more than five kilograms of cocaine and that he had two prior felony drug convictions (see Sentencing Tr. at 40-

42), the Court sentenced Smith to a term of life in prison for each count, pursuant to 21 U.S.C. § 841(b)(1)(A).

Smith appealed his conviction to the Eleventh Circuit Court of Appeals, arguing only that the denial of a pretrial motion to suppress, in which he had argued that the bus check constituted an unreasonable search and seizure, was erroneous.  See Smith, 201 F.3d at 1321-23.  Smith did not raise any challenges to his sentence whatsoever.  The Eleventh Circuit affirmed the denial of his motion to suppress, thereby affirming his conviction and sentence.  Id. at 1323.

The Eleventh Circuit issued its opinion on January 27, 2000, after which Smith did not petition the Supreme Court for a writ of certiorari.  Accordingly, Smith's conviction and sentence became final 90 days later, on April 26, 2000, upon expiration of the period for requesting certiorari review.  See Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002) (where a defendant does not seek certiorari review, his conviction and sentence become "final," for purposes of 28 U.S.C. § 2255(f)(1), upon the expiration of time to seek certiorari review).   Under 28 U.S.C. § 2255(f)(1), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), Smith had one year from that date, or until April 26, 2001, to file a § 2255 motion to vacate.  Smith filed the instant Motion to Vacate on July 23, 2013, more than 13 years after his conviction and sentence became final.  Therefore, his Motion to Vacate is untimely under 28 U.S.C. § 2255(f)(1).

Recognizing this is a problem, Smith argues that his Motion to Vacate is timely under 28 U.S.C. § 2255(f)(3), an alternative trigger date for AEDPA's one-year statute of limitations.  Section 2255(f)(3) allows a petitioner to file a motion to vacate within a year

of the date on which the Supreme Court newly recognized the right asserted in the motion, if that right has been made retroactively applicable on collateral review.

## II.     Smith's Motion to Vacate

Smith essentially raises three substantive arguments in his Motion to Vacate.  First, Smith argues that his conviction and sentence violate his Fifth Amendment right to due process and his Sixth Amendment right to a trial by jury because the Indictment did not allege, and the jury was not required to find, either the drug quantity or the fact of his prior felony drug convictions.  (See Motion to Vacate at 18-21).  Instead, the judge found the two critical facts on which his sentence was based: (1) that Smith's offense involved more than five kilograms of cocaine, and (2) that Smith had two prior felony drug convictions.  Smith claims that because these two facts affected his mandatory minimum sentence, the judicial fact-finding procedure employed in his case violated his rights to due process and to a trial by jury, as understood by the Supreme Court in Alleyne v. United States, 133 S. Ct. 2151 (2013) (holding that, other than the fact of a prior conviction, any fact that increases the mandatory minimum sentence is an element of the offense, and therefore must be submitted to a jury and proven beyond a reasonable doubt).  At the same time, Smith argues that Alleyne announced a new, retroactively applicable rule of law that makes his Motion to Vacate timely under 28 U.S.C. § 2255(f)(3), because the Motion was filed within a year of Alleyne.  (See Motion to Vacate at 15).

Smith's second argument is that the government's § 851 enhancement notice was defective, and the Court's sentence was erroneous, because both improperly counted his 1978 and 1991 drug convictions as "prior felony drug convictions" for the purpose of imposing a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A).  (See Motion to

Vacate at 20-23).   Smith contends that neither offense qualifies as a § 841(b)(1)(A) predicate conviction under the Supreme Court's decisions in <u>Moncrieffe v. Holder</u>, 133 S. Ct. 1678 (2013) (Georgia conviction for possessing a small amount of marijuana with intent to distribute, where there was no indication that noncitizen sought remuneration, did not qualify as an "aggravated felony" for purposes of deportation under the Immigration and Nationality Act), and <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013) (in determining whether a prior conviction qualifies as a predicate conviction under the Armed Career Criminal Act, a federal court may not use the modified categorical approach where the statute of conviction has a single, indivisible set of elements).   Smith further contends that <u>Moncrieffe</u> and <u>Descamps</u> announced new, retroactively applicable rules of law that also render his Motion to Vacate timely under 28 U.S.C. § 2255(f)(3).

Smith's third argument is that the Court lacked subject matter jurisdiction to convict and sentence him because the Indictment failed to allege the drug quantity, and therefore it "failed to charge an offense against the drug laws of the United States."   (<u>See</u> Motion to Vacate at 24-26).   Smith argues that it was not enough to allege that he committed a drug offense under 21 U.S.C. § 841(a)(1), but that in order to invoke a federal court's subject matter jurisdiction, the Indictment also needed to specify the drug quantity and applicable penalty provision under § 841(b).   Smith further seems to contend that because the Indictment alleged an "incomplete offense," he is actually innocent, and that this too allows him to overcome any statute of limitations.   (<u>See</u> <u>id.</u> at 24, 26).

## III.   Timeliness, 28 U.S.C. § 2255(f)(3), and Retroactivity

Under AEDPA, a prisoner must move to vacate a conviction and sentence within a year of one of four dates.   The statute of limitations runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was **initially** recognized by the Supreme Court, if that right has been **newly recognized** by the Supreme Court **and** made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) (emphases added).  The third provision, the one at issue here, allows a prisoner to file his motion to vacate within one year of a Supreme Court decision, if the Supreme Court's decision newly recognized the right asserted in the petition, and if the right has been made retroactively applicable on collateral review.  For purposes of § 2255(f)(3), only the Supreme Court can recognize a new right, but any court can make the retroactivity determination.  Dodd v. United States, 365 F.3d 1273, 1278 (11th Cir. 2004).

The first step in the § 2255(f)(3) analysis is to determine whether the Supreme Court decision in question announced a "new rule." Figuereo-Sanchez v. United States, 678 F.3d 1203, 1207 (11th Cir. 2012) (citing Teague v. Lane, 489 U.S. 288, 300 (1989) (plurality opinion)).  "'[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.'"  Howard v. United States, 374 F.3d 1068, 1073-74 (11th Cir. 2004) (quoting Teague, 489 U.S. at 301 (internal citations omitted)).

8

—

If the decision did announce a new rule, the next step is to determine whether the rule satisfies an exception to the general prohibition against retroactively applying new rules on collateral review. See Teague, 489 U.S. at 305-10. Generally, new substantive rules apply retroactively, but new rules of criminal procedure do not. Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004). "A rule is substantive, as opposed to procedural, if it 'narrow[s] the scope of a criminal statute by interpreting its terms' or is a 'constitutional determination[ ] that place[s] particular conduct or persons covered by the statute beyond the State's power to punish.'" King v. United States, 610 F. App'x 825, 826-27 (11th Cir. 2015) (citing Schriro, 542 U.S. at 351-54), cert. denied, 136 S. Ct. 349 (2015). A new rule is also substantive if it prohibits a category of punishment for certain offenders or offenses. See In re Rivero, 797 F.3d 986, 990 (11th Cir. 2015) (citing as an example Atkins v. Virginia, 536 U.S. 304 (2002), where the Supreme Court prohibited the imposition of the death penalty on the intellectually disabled). "New rules of criminal procedure, by contrast, are those that 'regulate only the manner of determining the defendant's culpability,' such as by allocating decisionmaking authority as to who must find the 'essential facts bearing on punishment.'" King, 610 F. App'x at 827 (citing Schriro, 542 U.S. at 353). The only procedural rules that apply retroactively on collateral review are "watershed rules" of criminal procedure, i.e., those that implicate the fundamental fairness and accuracy of a criminal proceeding. Schriro, 542 U.S. at 352. The benchmark for a "watershed rule" of criminal procedure is a case like Gideon v. Wainwright, 372 U.S. 335 (1963), where the Supreme Court held that the accused are entitled to the assistance of counsel if they cannot afford one. Beard v. Banks, 542 U.S. 406, 417 (2004).

IV.     **Analysis**

A.      **Smith's Motion to Vacate is Not Timely Under § 2255(f)(3)**

Smith relies on three Supreme Court decisions, Alleyne, Moncrieffe, and Descamps, supra, to make his Motion to Vacate timely under 28 U.S.C. § 2255(f)(3). (See Motion to Vacate at 15).   None of these decisions renders his Motion timely, however, because each decision either did not announce a "new rule" applicable to Smith, or if it did, the rule does not apply retroactively on collateral review.

In Alleyne, the Supreme Court held that any fact that increases the mandatory minimum sentence, other than the fact of a prior conviction, is an element of the offense, and therefore must be submitted to a jury and proven beyond a reasonable doubt.   133 S. Ct. at 2155.  However, in Jeanty v. Warden, FCI-Miami, 757 F.3d 1283, 1285 (11th Cir. 2014), the Eleventh Circuit Court of Appeals held that Alleyne does not apply retroactively on collateral review.   The Eleventh Circuit explained that Alleyne did not break new ground or announce a "new rule," but merely extended the rule of Apprendi v. New Jersey, 530 U.S. 466 (2000), where the Supreme Court held that any fact that increases the maximum sentence is also an element of an offense, and must be submitted to a jury to be proven beyond a reasonable doubt.  Jeanty, 757 F.3d at 1285.  The Eleventh Circuit further explained that because it had determined that Apprendi does not apply retroactively on collateral review, neither would Alleyne.   Jeanty, 757 F.3d at 1285-86 (citing McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001)).   Therefore, because Alleyne does not apply retroactively, Smith cannot rely on it to make his Motion to Vacate timely under 28 U.S.C. § 2255(f)(3). See King, 610 F. App'x at 827-29.

In <u>Moncrieffe</u>, the Supreme Court set out to determine whether a noncitizen's prior conviction qualified as an "aggravated felony" for purposes of deportation under the Immigration and Nationality Act ("INA").   133 S. Ct. at 1682-83 (citing 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii)).   Under the INA, an "aggravated felony" includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."  8 U.S.C. § 1101(a)(43)(B). In turn, a "drug trafficking crime" under § 924(c) "means any felony punishable under the Controlled Substances Act ["CSA"] (21 U.S.C. 801 et seq.)."   18 U.S.C. § 924(c)(2). Moncrieffe's prior conviction was a Georgia state law conviction for possessing a small amount of marijuana with intent to distribute, in violation of Ga. Code Ann. section 16-13-30(j)(1), where there was no indication he sought remuneration for the drugs.  <u>Moncrieffe</u>, 133 S. Ct. at 1683.   The government sought to deport Moncrieffe, "reason[ing] that possession of marijuana with intent to distribute is an offense under the CSA, 21 U.S.C. § 841(a), punishable by up to five years' imprisonment, § 841(b)(1)(D), and thus an aggravated felony."  <u>Id.</u>

The Supreme Court concluded that Moncrieffe's minor marijuana offense did not qualify as a "drug trafficking crime" within the meaning of 18 U.S.C. § 924(c)(2), and therefore did not qualify as an "aggravated felony" under the INA.  133 S. Ct. at 1686-87, 1693-94.  Because § 924(c)(2) linked the definition of "drug trafficking crime" to whether the prior conviction was for an offense punishable as a felony under the CSA, <u>id.</u> at 1683 (citing 18 U.S.C. § 924(c)(2); <u>Lopez v. Gonzalez</u>, 549 U.S. 47, 60 (2006)), the Court framed its inquiry as whether the state drug offense (1) necessarily "proscribe[d] conduct that is an offense under the CSA," and (2) whether the CSA would "'necessarily' prescribe

felony punishment for that conduct," id. at 1685.   The Court reasoned that, assuming Moncrieffe committed only the least of the acts punishable under Ga. Code Ann. section 16-13-30(j)(1) (2007), see 133 S. Ct. at 1684, the prior offense was comparable only to distributing a small amount of marijuana for no remuneration, which is a misdemeanor under the federal CSA, 21 U.S.C. §§ 841(b)(4) and 844, id. at 1685-87.   Accordingly, because the prior state drug offense was not "necessarily" punishable as a felony under the CSA, it did not qualify as a "drug trafficking crime," and therefore was not an "aggravated felony" for purposes of deportation.

Importantly though, Moncrieffe did not interpret the statutory term relevant to Smith's case, which is the phrase "prior conviction for a felony drug offense" within the meaning of § 841(b)(1)(A)'s enhanced penalty provisions.   Even more importantly, the term "felony drug offense," as used throughout § 841(b)(1), has a broader definition than the term "drug trafficking crime," as used in § 924(c)(2) and interpreted in Moncrieffe. According to § 924(c)(2), a "drug trafficking crime" is only a crime that is punishable as a felony under the federal CSA.   See also Moncrieffe, 133 S. Ct. at 1683.   According to 21 U.S.C. § 802(44), however,

> [t]he term "felony drug offense" means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

21 U.S.C. § 802(44) (emphasis added).   Thus, quite unlike § 924(c)(2), which links the definition of "drug trafficking crime" to whether the crime would be a felony under the CSA, the term "felony drug offense" encompasses drug crimes that are also punishable as

felonies under state law, even though they might not be punishable as felonies under federal law.

Given that distinction, the analysis in <u>Moncrieffe</u> is inapplicable. Because <u>Moncrieffe</u> involved statutes that tied the definition of an illicit drug trafficking offense to whether it would be a felony under the federal CSA, the Supreme Court had to engage in a categorical analysis to ascertain whether the elements of the state drug offense matched up with the elements of a felony offense under the CSA. <u>See</u> 133 S. Ct. at 1684-87.   Here by contrast, § 802(44) does not confine the definition of "felony drug offense" to whether it would be a felony under federal law.  As such, there is no need determine whether the prior state drug conviction would be punishable as a felony under the federal CSA.

Additionally, there has been no dispute that Smith's 1978 and 1991 convictions were for possession of marijuana or cocaine, and that both were felony offenses <u>under Florida law</u>.  Accordingly, both convictions properly qualified as "prior convictions for a felony drug offense" within the meaning of § 841(b)(1)(A).  As such, <u>Moncrieffe</u> could not have recognized the right Smith advances in his petition – the asserted right not to have the two prior drug convictions count as § 841(b)(1)(A) predicate offenses.  Therefore, <u>Moncrieffe</u> cannot render his § 2255 motion timely under § 2255(f)(3).

As for <u>Descamps</u>, the Supreme Court did not announce a "newly recognized right" within the meaning of 28 U.S.C. § 2255(f)(3).  There, the Supreme Court addressed the procedure for determining whether a defendant's prior conviction qualifies as a "violent felony" for purposes of the Armed Career Criminal Act's 15-year mandatory minimum sentence.  133 S. Ct. at 2281-82.  The Supreme Court held that where a statute of

13

conviction has only a single, indivisible set of elements, a court may not use the "modified categorical approach"[4] to determine whether the prior offense was a "violent felony."  Id. at 2282.  Rather, the Supreme Court held that a court could only judge whether an offense under an indivisible statute was a "violent felony" as a categorical matter, based on the elements set forth in the statute.  See id. at 2293.

In several decisions, the Eleventh Circuit Court of Appeals has held that Descamps did not announce a new rule.  Mays v. United States, 817 F.3d 728, 734 (11th Cir. 2016) ("As the Supreme Court and other circuits have recognized, Descamps did not announce a new rule – its holding merely clarified existing precedent.") (citing Descamps, 133 S. Ct. at 2283, 2285, and Ezell v. United States, 778 F.3d 762, 763 (9th Cir. 2015)); Abney v. Warden, 621 F. App'x 580, 583-84 (11th Cir. 2015); King, 610 F. App'x at 828-29.  In doing so, the Eleventh Circuit has explained that the Supreme Court did not announce a "new" rule at all in Descamps, because "the Descamps Court emphasized that the outcome in the case was 'all but resolve[d]' by existing Supreme Court precedent 'explaining the categorical approach and its "modified" counterpart.'"  Abney, 621 F. App'x at 584 (quoting Descamps, 133 S. Ct. at 2283).

Although the Eleventh Circuit held in Mays that Descamps is retroactive, 2016 WL 1211420 at *1, 4, retroactivity alone is not sufficient to trigger § 2255(f)(3).  Section 2255(f)(3) has two requirements: (1) the right invoked in the prisoner's § 2255 motion must have been "initially recognized" or "newly recognized" by the Supreme Court, and

---

[4]    The "modified categorical approach" only applies where a defendant's statute of conviction has separate, divisible elements (i.e. the statute identifies different ways of committing a violation, where some of those alternatives would qualify as a predicate offense and some would not).  Under the "modified categorical approach," a sentencing court may examine a limited class of court documents, including indictments, jury instructions, and plea agreements, to determine which alternative formed the basis of the defendant's prior conviction.

(2) the rule invoked in the § 2255 motion must have been made retroactively applicable. See 28 U.S.C. § 2255(f)(3). Thus, for a Supreme Court decision to trigger § 2255(f)(3), it must satisfy both the statute's "newness" and "retroactivity" requirements. See Figuereo-Sanchez, 678 F.3d at 1207 n.4. The Supreme Court and the Eleventh Circuit have both made plain that there is nothing "new" about Descamps. Descamps, 133 S. Ct. at 2283, 2285; Mays, 2016 WL 1211420 at *4; Abney, 621 F. App'x at 584; King, 610 F. App'x at 828 ("As for Descamps, it is not a new rule. It merely applied prior precedent to reaffirm that courts may not use the modified categorical approach to determine whether convictions under indivisible statutes are predicate ACCA violent felonies.").[5] Accordingly, Smith cannot rely on Descamps to make his Motion to Vacate timely under 28 U.S.C. § 2255(f)(3), because Descamps did not "newly recognize" the right asserted. See King, 610 F. App'x at 828-29.

In his Reply, Smith seems to contend that two other decisions render his Motion to Vacate timely under § 2255(f)(3): Donawa v. Attorney General, 735 F.3d 1275 (11th Cir. 2013), and Burrage v. United States, 134 S. Ct. 881 (2014). (Reply at 2-3). Donawa cannot make Smith's Motion to Vacate timely under § 2255(f)(3), because § 2255(f)(3) requires the petitioner to rely on a new rule announced by the Supreme Court. See 28 U.S.C. § 2255(f)(3). Donawa is a decision of the Eleventh Circuit Court of Appeals, so Smith cannot rely on that opinion to successfully invoke § 2255(f)(3)'s statute of limitations. Burrage, by contrast, is a Supreme Court decision, but it has no application

---

[5]   Allowing defendants to invoke § 2255(f)(3) based on "non-new" rules and decisions would allow defendants, who have not been diligent in seeking post-conviction relief, to get a windfall from Supreme Court decisions, like Descamps, that merely apply or clarify preexisting rules. It would also be a disservice to the language Congress chose to use in § 2255(f)(3), which requires the petitioner to identify a Supreme Court decision that "initially recognize[d]" or "newly recognize[d]" the right advanced in the petition.

to Smith's case.  In <u>Burrage</u>, the Supreme Court interpreted the causation requirement for the imposition of the 20-year mandatory minimum sentence where one unlawfully distributes a Schedule I or Schedule II controlled substance, and "death or serious bodily injury results from the use of such substance."  134 S. Ct. at 885 (citing 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)-(C)).  The Supreme Court held that, "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury."  134 S. Ct. at 892.  Fortunately, nobody died or suffered serious injury as a result of Smith distributing cocaine, so <u>Burrage</u> is inapplicable.  As with <u>Alleyne</u>, <u>Moncrieffe</u>, and <u>Descamps</u>, <u>Donawa</u> and <u>Burrage</u> do not make his Motion to Vacate timely under 28 U.S.C. § 2255(f)(3).

**B.    Smith's Jurisdictional Argument Does Not Avoid AEDPA's Statute of Limitations**

Smith argues that the United States' failure to allege a drug quantity or applicable penalty provision in the Indictment is a jurisdictional defect, and as such, the Court lacked subject matter jurisdiction to sentence him.  (<u>See</u> Motion to Vacate at 24-26).  Even assuming there was a jurisdictional defect in the Indictment, that would not permit him to file an untimely motion to vacate.[6]

---

[6]    The Supreme Court and the Eleventh Circuit have held that the failure to allege a specific drug quantity or penalty provision does not render an indictment <u>jurisdictionally</u> defective.  <u>See</u> <u>United States v. Cotton</u>, 535 U.S. 625, 627-31 (2002); <u>United States v. Brown</u>, 752 F.3d 1344, 1349-50 (11th Cir. 2014); <u>United States v. Cromartie</u>, 267 F.3d 1293, 1297 (11th Cir. 2001); <u>McCoy v. United States</u>, 266 F.3d 1245, 1248-54 (11th Cir. 2001).  The fact that the drug quantity is an element of the offense post-<u>Alleyne</u> and post-<u>Apprendi</u> does not alter that conclusion, because the failure to allege an element of the offense still does not qualify as a jurisdictional defect.  <u>Brown</u>, 752 F.3d at 1353-54.  (continued)

It is true that challenges to a court's subject matter jurisdiction cannot be waived or procedurally defaulted.  United States v. Peter, 310 F.3d 709, 712-13 (11th Cir. 2002). That does not mean, however, that a petitioner's jurisdictional challenge cannot be time-barred under AEDPA.  To the extent Smith argues that the statute of limitations should not apply to him because he is raising a jurisdictional challenge to his conviction, he is incorrect. "'The courts have uniformly rejected this contention, observing that § 2255 itself expressly contemplates challenges to a sentencing court's jurisdiction without in any way indicating that these particular sorts of attacks need not be brought within the statute's one-year period of limitation.'"  Wallace v. United States, 981 F. Supp. 2d 1160, 1166 (N.D. Ala. 2013) (quoting United States v. Hicks, Case No. 96-80335-01, 2009 WL 1620430, at *1 (E.D. Mich. Jun. 9, 2009)) (collecting cases); see also Barreto-Barreto v. United States, 551 F.3d 95, 100 (1st Cir. 2008) (jurisdictional challenges "are not exempt from § 2255's filing deadline").  "[T]hat the court was without jurisdiction to impose [the] sentence" is one of the four limited grounds on which a prisoner may move to vacate his sentence, 28 U.S.C. § 2255(a), and yet Congress still imposed a one-year statute of limitations on motions to vacate, see § 2255(f).  Section 2255 gives no indication that jurisdictional challenges are exempt from the one-year statute of limitations.  Thus, Smith cannot avoid the statute of limitations by arguing that there was a jurisdictional defect in the Indictment.

---

All that an indictment must do to invoke a federal court's subject matter jurisdiction is to "charge[ ] the defendant with violating a valid federal statute as enacted in the United States Code." Brown, 752 F.3d at 1354 (citing Alikhani v. United States, 200 F.3d 732, 734-35 (11th Cir. 2000)).  Smith's Indictment did that, by alleging that he violated 21 U.S.C. § 841(a)(1) by conspiring to distribute cocaine and possessing cocaine with intent to distribute.  (Indictment at 1-2).  Thus, the Indictment was sufficient to invoke the federal court's subject matter jurisdiction, even if it omitted an element, such as the drug quantity.  See Brown, 752 F.3d at 1349-50, 1354.

## C.   Smith Has Not Adequately Alleged Actual Innocence to Overcome AEDPA's Statute of Limitations

Finally, Smith attempts to avoid the statute of limitations by alleging that he is actually innocent.  (See Motion to Vacate at 24, 26) (citing McQuiggin v. Perkins, 133 S. Ct. 1924 (2013) (holding that a plea of actual innocence may overcome AEDPA's statute of limitations)).  Smith's actual innocence claim appears to be based on the argument that the Indictment failed to allege a complete offense because it did not specify a drug quantity, and therefore he is legally innocent.  However, such an argument does not qualify as a plea of "actual innocence."  "First and most importantly, for purposes of the actual innocence exception, actual innocence means factual innocence, not mere legal insufficiency."  McKay v. United States, 657 F.3d 1190, 1197 (11th Cir. 2011) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)) (internal quotation marks omitted).  Thus, a defective indictment is not enough to open the actual innocence gateway to filing an untimely motion to vacate, because it does not suggest new evidence that undermines the defendant's guilt.  Justo v. Culliver, 317 F. App'x 878, 880-81 (11th Cir. 2008).

"To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence."  McKay, 657 F.3d at 1196 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).  To show actual innocence of a non-capital sentence, a movant must "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible" for the sentence he received.  See McKay, 657 F.3d at 1196-97 (quoting Sawyer v. Whitley, 505 U.S. 333, 336 (1992)).  Moreover, the movant alleging actual innocence of his sentence must show that "he is factually innocent of the conduct or underlying crime that serves as the

18

predicate for the enhanced sentence." <u>McKay</u>, 657 F.3d at 1198-99 (emphasis in original).

Smith has pointed to no evidence that he is factually innocent of either the instant offense of conviction or of his life sentence. Indeed, the trial evidence against Smith was incriminating, <u>see</u> <u>supra</u> at 3-4, and Smith has not produced any newly discovered evidence to undermine his conviction. Given the opportunity at the sentencing hearing, Smith also did not deny that he had been convicted twice of offenses involving the sale or possession of cocaine – he merely challenged whether he had been counseled for one of those convictions. (<u>See</u> <u>generally</u> Sentencing Transcript) (the Court found that both convictions were counseled). Here, Smith has relied on the argument that he is legally innocent of the instant offense because the Indictment was defective, and that he is legally innocent of the sentence because his 1978 and 1991 drug convictions do not qualify as "prior felony drug convictions" for the purpose of 21 U.S.C. § 841(b)(1)(A)'s mandatory-life sentence provision. These arguments do not amount to a plea of factual innocence, and therefore they cannot excuse the untimeliness of Smith's Motion to Vacate.

## V.    Certificate of Appealability

If Smith seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To make this substantial showing, Smith "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues

presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1.      The United States' "Motion to Dismiss Defendant's Pro Se 28 U.S.C. § 2255 Motion as Untimely" (Doc. 9) is **GRANTED**.

2.      Petitioner Alfred Ruvel Smith, Jr.'s "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Doc. 1) is **DISMISSED WITH PREJUDICE**.

3.      The Clerk shall enter judgment in favor of the United States and against Petitioner Alfred Ruvel Smith, Jr., and close the file.

4.      If Smith appeals the denial of the petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not

warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 9th day of June, 2016.


MARCIA MORALES HOWARD
United States District Judge


lc 19

Copies:

Counsel of record
Pro se petitioner