**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                               Case No.:     3:97-cr-120-J-34PDB

RUVEL ALFRED SMITH, JR.

_____/

## ORDER

This case is before the Court on Defendant Ruvel Alfred Smith, Jr.'s pro se Motion for Compassionate Release (Doc. 138, Motion) and counseled Supplemental Motion (Doc. 145, Supplemental Motion). In 1997, when Smith was 47 years old, he was convicted and sentenced for conspiracy to distribute cocaine and the distribution of cocaine. (Doc. 135, Amendment 782 Memorandum and Presentence Investigation Report at 4-5); see also United States v. Smith, 201 F.3d 1317, 1319 (11th Cir. 2000). Because the United States filed an information under 21 U.S.C. § 851 charging that Smith had two prior convictions for a felony drug offense – one in 1978 for possessing cocaine with intent to distribute and one in 1991 for possessing cocaine – Smith was subject to a mandatory term of life imprisonment. (Doc. 43, Section 851 Information); 21 U.S.C. § 841(b)(1)(A) (1997).[1]

Smith is now a 70-year-old inmate imprisoned at Coleman Medium FCI. He has been incarcerated for 23 years. Smith seeks release from prison under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), because he is an elderly inmate in declining

---

[1] When Smith was convicted, the United States Supreme Court had not yet decided Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013). As such, the drug quantity neither had to be alleged in the indictment nor proved beyond a reasonable doubt. Based on the law at the time, the Court found that Smith's offenses involved five kilograms or more of cocaine. (See Doc. 133, Order Dismissing § 2255 Motion at 4-5).

1

health. He also seeks release because of the Covid-19 pandemic and the risks it poses for elderly prisoners. According to the latest data from the Bureau of Prisons (BOP), 65 inmates and 33 staff members are currently positive for the virus at Coleman Medium FCI. Two inmates have died.[2]

The United States opposes the Motion because it argues Smith did not exhaust his administrative remedies and because Smith has not demonstrated extraordinary and compelling circumstances. The United States also argues that Smith is a danger to the community and that the § 3553(a) factors do not support a reduction in sentence. (Doc. 140, Response; Doc. 147, Supplemental Response).

For the reasons set forth below, the Court finds that Smith's request for compassionate release is due to be granted.

**I.     Compassionate Release**

Generally speaking, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), provides one avenue for reducing an otherwise final sentence.

Before Congress passed the First Step Act of 2018, the Director of the BOP had sole discretion to decide whether to move for compassionate release, and the Director's refusal to do so was judicially unreviewable. See, e.g., Cruz-Pagan v. Warden, FCC Coleman Low, 486 F. App'x 77, 79 (11th Cir. 2012); Crowe v. United States, 430 F. App'x

---

[2]     The data is available at https://www.bop.gov/coronavirus/. It is updated daily.

2

484, 485 (6th Cir. 2011) (collecting cases). But in 2013, the Office of Inspector General for the Department of Justice reported that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Dep't of Justice, Office of the Inspector General, <u>The Federal Bureau of Prisons' Compassionate Release Program</u> (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf. Perhaps as a response to that, one of Congress' stated purposes in passing the First Step Act was to "increas[e] the use and transparency of compassionate release." First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), § 603(b).

Following passage of the First Step Act, § 3582(c) now provides in relevant part:

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)** extraordinary and compelling reasons warrant such a reduction …
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Pursuant to its authority under 18 U.S.C. § 3582(c) and 28 U.S.C. § 994(t), the United States Sentencing Commission promulgated a policy statement governing the circumstances when compassionate release is appropriate. <u>See</u> U.S.S.G. § 1B1.13. The policy statement provides:

3

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> **(1)** **(A)** Extraordinary and compelling reasons warrant the reduction; or
>   **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The Sentencing Commission has not updated the policy statement since the First Step Act became law.

The commentary accompanying the policy statement instructs that "extraordinary and compelling reasons" exist under certain enumerated circumstances. U.S.S.G. § 1B1.13, cmt. 1. As relevant here, these circumstances include:

> **(B) Age of the Defendant.—** The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> …. [or]
>
> **(D) Other Reasons.--** As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Id., cmt. 1(B), 1(D). Notably, a movant for compassionate release bears the burden of proving that a reduction in his or her sentence is warranted. United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. Jun. 7, 2019); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (a movant under § 3582(c)(2) bears the burden of proving that a sentence reduction is appropriate).

4

## II.     Smith Has Satisfied the Exhaustion Requirement

Smith submitted a request for compassionate release to the warden of his facility on January 20, 2020. See Response at 4; Supplemental Response at 2; (see also Doc. 145-3, Inmate Request). The warden denied the request on January 27, 2020. (Doc. 145-4, Warden's Denial). On or around February 27, 2020, more than 30 days after submitting his request to the warden, Smith filed the pro se Motion in this Court (Doc. 138). The United States initially argued that Smith did not satisfy § 3582(c)(1)(A)'s exhaustion requirement because he did not appeal the warden's decision. Response at 4-5; Supplemental Response at 2-4. However, the United States later filed an addendum stating that the Department of Justice "views the plain language of the First Step Act to allow an inmate to file a motion after 30 days have passed since the request was made to the warden, or after exhausting administrative review, whichever is earlier." (Doc. 148, Addendum at 2-3) (emphasis in original).

While the United States' concession favors Smith, it is not dispositive. "The role of the judicial branch is to apply statutory language and we cannot cede our authority to interpret statutes to the parties or their attorneys." Bourdon v. United States Dep't of Homeland Security, 940 F.3d 537, 547 n.6 (11th Cir. 2019) (internal quotation marks and citations omitted). Thus, the Court must determine whether Smith actually satisfied § 3582(c)(1)(A)'s exhaustion requirement.

A district court can reduce the term of imprisonment "upon motion of the defendant" only "after [1] the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

5

is earlier." 18 U.S.C. § 3582(c)(1)(A) (bracketed numbers and emphasis added). As one jurist recently observed, the statute

> does not contain an exhaustion requirement in the traditional sense. That is, the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (i.e., the BOP) before bringing his petition to court. Rather, it requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court.

United States v. Haney, — F. Supp. 3d —, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) (emphasis in original).

In the view of the undersigned, the position initially urged by the United States is inconsistent with the plain language of the statute. Section 3582(c)(1)(A) unambiguously provides that a defendant may either move for compassionate release after the defendant has fully exhausted administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thus, "[t]he 30-day waiting time rule functions as an exception to a plenary exhaustion requirement...." United States v. Vence-Small, — F. Supp. 3d —, 2020 WL 1921590, at *4 (D. Conn. Apr. 20, 2020). As the Sixth Circuit Court of Appeals has held, "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days [of submitting a request to the warden], no matter the appeals available to them." United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020). That is what Smith did here. He submitted his request for compassionate release to the warden on January 20, 2020; the BOP did not exercise its authority to move for Smith's compassionate release; so, more than 30 days later, Smith filed a motion for compassionate release on his own behalf.

6

Implicit in the United States' original argument is the proposition that § 3582(c)(1)(A)'s exhaustion alternative applies only when the warden <u>fails to rule</u> on the inmate's request within 30 days. Because the warden did not fail to rule but rather denied Smith's request for compassionate release fewer than 30 days after he submitted it, the United States contended that Smith was required to further exhaust his administrative appeals. But that is not how the statute is written. The statute says nothing about the 30-day exhaustion alternative being contingent on the warden failing to issue a ruling within 30 days. This argument simply reads additional terms into the statute that are absent.[3]

In sum, § 3582(c)(1)(A) gives a defendant seeking compassionate release "the option to take [his] claim to federal court within 30 days [of submitting a request to the warden], no matter the appeals available to [him]." <u>Alam</u>, 960 F.3d at 834; see also <u>United States v. Harris</u>, 812 F. App'x 106, 107 (3d Cir. 2020) (remanding for further proceedings based on the government's concession of error, noting: "The Government argued, and the District Court agreed, that because the Warden denied Harris's request within thirty days, he was required to completely exhaust the administrative remedy process. However, the statute states that the defendant may file the motion thirty days after the warden receives his request." (citation omitted)). Here, Smith submitted his request for compassionate release to the warden on January 20, 2020. After the warden denied the request, Smith opted not to pursue the available appeals process, and instead, more than 30 days after

---

[3] Although some courts have held that the statute's 30-day exhaustion alternative applies only if the warden fails to rule on the inmate's request within 30 days ("the minority view"), <u>see, e.g.</u>, <u>United States v. Smith</u>, — F. Supp. 3d —, 2020 WL 2487277, at *6-9 (E.D. Ark. May 14, 2020); <u>United States v. Weidenhamer</u>, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *2-4 (D. Ariz. Nov. 8, 2019) (describing the interpretive issue), the undersigned is not persuaded by that view.

submitting his request he moved for compassionate release. Having taken these steps, Smith has satisfied § 3582(c)(1)(A)'s exhaustion requirement.

### III. Smith Has Shown Extraordinary and Compelling Reasons Warranting Compassionate Release

According to the Sentencing Commission's policy statement on compassionate release, the "Age of the Defendant" may qualify as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13, cmt. 1(B). The prisoner's age makes him eligible for compassionate release if he meets three criteria: (i) the inmate "is at least 65 years old"; (ii) the inmate "is experiencing a serious deterioration in physical or mental health because of the aging process"; and (iii) the inmate "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id.

Smith obviously meets the first and third criteria: he is 70 years old and has served 23 years in prison. The parties' disagreement centers on whether he meets the second requirement – that he is experiencing a serious deterioration in physical or mental health because of the aging process. The medical records attached to the Supplemental Motion (Doc. 145) establish that he does. According to Smith's medical records, he suffers from various periodontal problems, chronic knee and shoulder pain, arthritis, and cerebrovascular disease, among other issues. Supplemental Motion at 7; (Doc. 145-2, Medical Records at 1). Most notably, Smith suffered a stroke in December 2019, Medical Records at 9-18, from which he continues to experience related sequelae, including dizziness and vertigo, see id. at 1, 19-27. Thus, the records show that Smith suffers from serious age-related physical decline.

8

The Covid-19 pandemic only accentuates Smith's need for compassionate release. The danger posed by coronavirus is especially acute for elderly prisoners. Unlike members of the general public, inmates are confined in close quarters with hundreds of other people under conditions that are not very conducive to proper hygiene or social distancing. Of course, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). However, Covid-19 poses especially grave risks for older individuals. According to the Centers for Disease Control (CDC), the risk of death from Covid-19 increases with age, with eight of ten Covid-19 deaths occurring among those aged 65 and older.[4] And, the risk of serious complications from Covid-19 is further heightened for those who suffer from cerebrovascular disease or have had a stroke.[5] Notably,

> [n]ot only is [Smith] at greater risk for future strokes, but strokes are now being linked to COVID-19. See, e.g., Thomas J. Oxley et al., Large-Vessel Stroke as a Presenting Feature of Covid-19 in the Young, NEJM.org (April 28, 2020), https://www.nejm.org/doi/full/10.1056/NEJMc2009787?amp/= (last visited May 8, 2020). And, according to preliminary CDC data, individuals with neurologic disorders such as stroke and migraine are more likely to require hospitalization after contracting COVID-19. See CDC COVID-19 Response Team, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020, 69 Morbidity & Mortality Weekly Rep. 382, 384 (Apr. 3, 2020), available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6913e2.htm.

United States v. Jenkins, — F. Supp. 3d —, 2020 WL 2466911, at *6 (D. Colo. May 8, 2020). On this record, the Court concludes that given Smith's age, medical conditions, and

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html
[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

medical history, the dangers posed <u>to him in particular</u> by Covid-19 constitute extraordinary and compelling reasons to support a request for compassionate release. See U.S.S.G. § 1B1.13, cmt. 1(B).[6]

### IV. Smith is Not a Danger to the Community and the § 3553(a) Factors Support a Reduction in Sentence

That Smith has demonstrated extraordinary and compelling reasons for compassionate release does not end the analysis. The Court must also consider the factors identified in 18 U.S.C. § 3553(a) to determine whether it can conclude that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2), and whether a reduction of his sentence is consistent with the Sentencing Commission's policy statements, 18 U.S.C. § 3582(c)(1)(A).

Upon review of the record, having considered the § 3553(a) factors, the Court determines that Smith is not a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2); 18 U.S.C. § 3142(g). Preliminarily, the Court observes that Smith does not have a propensity for violence nor does it appear that he is likely to reoffend. The instant offenses of conviction – although serious – were nonviolent drug crimes. According to the Presentence Investigation Report (PSR), there is no indication Smith used or carried a firearm in connection with these offenses. PSR at ¶¶ 1-10, 15-23. The Court recognizes

---

[6] Smith also invites the Court to interpret Application Note 1(D) of the compassionate release policy statement to allow the Court to grant a sentence reduction for reasons other than those enumerated in the commentary. Supplemental Motion at 15-17. The Court has rejected that argument. <u>United States v. Copeland</u>, No. 3:11-cr-281-J-34JBT, 2020 WL 4193554, at *2-3 (M.D. Fla. July 21, 2020). Nevertheless, because Smith's circumstances fall within the extraordinary and compelling reason enumerated in U.S.S.G. § 1B1.13, cmt. 1(B), the Court has no need to consider his additional argument.

10

that on four previous occasions, Smith was convicted of crimes involving assault, breaking and entering, robbery, and carrying a concealed weapon. (Id. at ¶¶ 24-27). However, each of these offenses occurred between 1970 and 1973 – 47 to 50 years ago. Smith was in his early 20's when he committed the violent offenses. He was 47 years old when he committed the offenses of conviction and is now 70 years old.

Statistics show that age exerts a powerful influence on the recidivism rate, which declines as offenders get older. The Effects of Aging on Recidivism Among Federal Offenders, at 3, 23, United States Sentencing Commission (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf. According to the Sentencing Commission, offenders aged 65 and older, like Smith, are the least likely to be rearrested, reincarcerated, or reconvicted. Id. at 23. And importantly from a public safety perspective, offenders over the age of 40 whose crime of conviction was nonviolent recidivated at half the rate of violent offenders, and when nonviolent offenders did recidivate, the new offense was less likely to be violent. See Recidivism Among Federal Violent Offenders, United States Sentencing Commission (2019), at 3, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf.

Additionally, Smith's BOP disciplinary record shows that he has generally conducted himself well in prison. Despite being in custody for 23 years, Smith has received only one disciplinary infraction, in 2005, for the use of drugs or alcohol. (Doc. 145-1, BOP Progress Report at 2). The BOP reports that Smith "has maintained clear conduct since" then. Id. Given his age, health conditions, and his relatively good behavior in prison, the

11

Court is convinced that Smith does not pose a danger to any other person or to the community. See U.S.S.G. § 1B1.13(2).

To the extent Smith poses any risk of reoffending, the Court is of the view that the standard conditions of supervised release can control that risk. Among other things, Smith will be required to report regularly to a probation officer, to truthfully answer any inquiries by the officer, and to submit to random visits. Smith will know that if he reoffends while on supervised release, he will be subject to the revocation of his supervised release and reimprisonment.

Likewise, for many of the same reasons stated above, the Court finds that consideration of the § 3553(a) factors supports a finding that reducing Smith's sentence is consistent with the Sentencing Commission's policy statement. Smith has served 23 years in prison, which is a significant punishment by any measure. Smith also has shown signs of rehabilitation and, as noted above, has had only a single disciplinary infraction over the course of 23 years in prison, with no infractions over the last 15 years. Smith also has availed himself of the BOP's educational programs, taking dozens of courses and earning his G.E.D. while in prison. BOP Progress Report at 1-2.

It is further worth noting that if sentenced in 2020, Smith would no longer be subject to a mandatory term of life in prison under the First Step Act. Today, a defendant must have at least two prior convictions "for a serious drug felony or serious violent felony" to be eligible for the maximum recidivist enhancement, which is now 25-years-to-life in prison. 21 U.S.C. § 841(b)(1)(A) (2020). The United States relied on the following two convictions to enhance Smith's sentence: (1) a 1978 Florida conviction for the possession of cocaine with intent to sell, for which he was sentenced to 14 months in prison; and (2) a 1991

Florida conviction for the possession of cocaine, for which he was sentenced to five years in prison. See Section 851 Information; PSR at ¶¶ 28, 30. Under the First Step Act, neither conviction would qualify as a "serious drug felony." A "serious drug felony" "means an offense described in section 924(e)(2) of Title 18 for which-- (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57). The 1978 conviction would not have qualified as a serious drug felony because Smith was released from his 14-month term of imprisonment more than 15 years before he committed the instant offense in 1997. See PSR at ¶¶ 6-10, 28. The 1991 conviction would not have counted as a serious drug felony because the mere possession of cocaine is not "an offense described in section 924(e)(2) of Title 18." 21 U.S.C. § 802(57). Simple possession of cocaine does not "involv[e] manufacturing, distributing, or possessing with intent to manufacture or distribute" a controlled substance. 18 U.S.C. § 924(e)(2)(A)(ii). "Thus, the definition of 'serious drug offense' excludes state convictions for simple possession." United States v. Hansley, 54 F.3d 709, 718 (11th Cir. 1995). And, even if both convictions did qualify as a serious drug felony, Smith's mandatory minimum sentence would have been a term of 25 years in prison, 85% of which is 21 years and three months. Smith has served more time than that.

Today, a defendant with an identical criminal record, and who committed identical offenses, would not have been subject to a mandatory term of life in prison. See 21 U.S.C. § 841(b)(1)(A) (2020). According to Smith's PSR, his sentencing guidelines range was 151 to 188 months in prison, based on a total offense level of 32 and a Criminal History Category of III. PSR at ¶ 57. Smith has been in custody for approximately 280 months (23

13

years and four months, dating from his arrest on May 5, 1997). If not for the mandatory term of life imprisonment – which would not apply today – Smith likely would have received a lesser sentence and would have been released from prison quite some time ago.

Section 3553(a) also requires a sentencing court to consider, among other factors, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a)(2). It also requires the sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), the sentencing range established by the sentencing guidelines, § 3553(a)(4)(A), and the need to avoid unwarranted sentencing disparities, § 3553(a)(6). In view of all the § 3553(a) factors, the Court finds that reducing Smith's term of imprisonment to time served is consistent with the applicable policy statements issued by the Sentencing Commission.

### V.     Conclusion

Smith, now aged 70, was sentenced 23 years ago to a mandatory term of life imprisonment under a sentencing regime whose time has passed. Although his sentence was (and is) lawful, he probably would not have received the same sentence today. More to the point, Smith has proven that he qualifies for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.

Accordingly, it is hereby **ORDERED**:

1. Defendant Ruvel Alfred Smith, Jr.'s pro se Motion for Compassionate Release (Doc. 138) and Supplemental Motion (Doc. 145) are **GRANTED**.

2. The Court reduces Smith's term of imprisonment to **TIME SERVED**. Upon his release from prison, Smith will begin serving a term of supervised release of **10 years**. 21 U.S.C. § 841(b)(1)(A); PSR at ¶ 58. Smith will be subject to the standard conditions of supervised release.

3. There being a verified residence and an appropriate release plan in place, this order is stayed for **up to 14 days** to make appropriate travel arrangements and to ensure Smith's safe release. Smith shall be released as soon as appropriate travel arrangements are made and it is safe for him to travel. There shall be no delay in ensuring travel arrangements are made. If more than 14 days are needed to make appropriate travel arrangements and ensure Smith's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

4. The Court recommends that prison officials place Smith in quarantine pending his release, both to ensure his safety and that of the community upon his release.

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of August, 2020.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:

Counsel of record
Defendant Ruvel Alfred Smith, Jr.
United States Probation Office
United States Bureau of Prisons
Warden, Coleman Medium FCI

15